**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **RICHARD PHAN AKA CONG TRANH PHAN,**<br><br>Plaintiff,<br><br>vs.<br><br>**CSK AUTO, INC.,**<br><br>Defendant. | Case No.: 11-CV-02327 YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Richard Phan ("Phan") brings this employment discrimination, retaliation, and harassment action against Defendant CSK Auto, Inc. ("CSK" or "Defendant"), alleging violations of California's Fair Employment and Housing Act, Cal. Gov. Code §§ 12940 *et seq.* Plaintiff alleges states four claims: (1) discrimination based on disparate treatment, *id.* § 12940(a); (2) retaliation, *id.* § 12940(h); (3) hostile work environment and harassment, *id.* § 12940(j); and (4) failure to prevent discrimination and harassment, *id.* § 12940(k). (Dkt. No. 1, Ex. A ("Complaint").)[1]

CSK has moved for summary judgment (Dkt. No. 38 ("MSJ")), arguing there are no disputes of material fact and it is entitled to judgment as a matter of law. On August 21, 2012, the Court heard oral argument.

Having carefully considered the papers submitted and the argument of counsel, for the reasons set forth below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion

---

[1] Plaintiff's Complaint alleges nine causes of action. However, he has agreed to dismiss his claims for: Common Law Employment Discrimination (Second Cause of Action), Common Law Retaliation (Fourth Cause of Action), Breach of Contract (Fifth Cause of Action), Breach of Covenant of Good Faith and Fair Dealing (Sixth Cause of Action), and Fraud and Deceit (Eighth Cause of Action). Although Plaintiff has not yet dropped these claims, he has conceded that he has no evidence to support these claims, and does not oppose entry of summary judgment on these claims. For that reason, the Court will enter summary judgment on these causes of action without further analysis.

for Summary Judgment.

## I. BACKGROUND

Plaintiff is an Asian male who was born in Vietnam. Defendant CSK is an auto parts retailer doing business in California as O'Reilly Auto Parts. Plaintiff has worked at CSK since 1999. He started as a cashier, and in 2003 was promoted to store manager. In 2007, Plaintiff was demoted to his current position of first assistant store manager. Plaintiff claims that throughout his employment with CSK he has been singled out, demoted, denied promotional opportunities, harassed, discriminated against, and retaliated against based upon his race and national origin.

### A. ADVERSE EMPLOYMENT ACTIONS ALLEGED IN THE COMPLAINT ABOUT WHICH PHAN DOES NOT CONTEND THERE IS A MATERIAL ISSUE OF FACT FOR TRIAL

#### 1. *Phan demoted for sexual harassment.*

In February 2007,[2] CSK demoted Plaintiff to first assistant store manager for violating CSK store sexual harassment policy. Phan gave his female supervisor a greeting card, a stuffed animal and a box of chocolates for Valentine's Day 2007. (Motion for Summary Judgment ("MSJ"), Dkt. No. 3, at 3.) Phan's supervisor felt the gifts contained sexually suggestive material[3] and reported the incident to CSK Human Resources, stating that the gifts made her uncomfortable and that she no longer wished to supervise him. (*Id.* at 3-4.) CSK Human Resources investigated the matter and demoted Phan to first assistant manager, without a pay reduction, and transferred Phan to a different district. (*Id.* at 4.) Plaintiff believes that he was set up by his store manager because she had demanded that he give her a Valentine's Day gift. (*See* Complaint at 7-8.)

Phan does not argue that there is a material issue of fact as to his demotion.

---

[2] The first incident about which Phan complains occurred in 2004 or 2005 when Norman Yoshimoto, Plaintiff's former district manager, solicited and accepted a $10,000.00 cashier's check from Plaintiff for Yoshimoto's private real estate investments. (*See* Complaint at 6.) Plaintiff complained to CSK human resources and loss prevention ("CSK Human Resources") that he felt pressured into the payment. (*Id.*) As a result of Plaintiff's complaint, Plaintiff was fully reimbursed, and Plaintiff was transferred to another district so that he no longer would have to report to Yoshimoto. (*Id.*) Although Plaintiff includes this incident in his Complaint, he does not oppose summary judgment based upon the incident.

[3] The outside of the card stated: "It's Valentine's Day! What do you say we put on some soft music . . .." (*See* Dkt. No. 38, Ex. 7, at CSK000258-259.) When opened, the card read ". . . and nothing else," and depicted a room with a bed and with undergarments strewn about the floor, and played the Rolling Stone's song "Let's Spend the Night Together." (*See* Dkt. No. 38, Ex. 6 at CSK000207, ¶ 6, CSK000208, ¶ 1; Ex. 7, at CSK000258-59; and Ex. 1, at 90:13-91:6.)

2

### 2. *Letter of concern for not reporting sexual harassment.*

In January 2009, CSK issued Phan a Letter of Concern for failing to report the sexual harassment of a co-worker of which Plaintiff was aware. (Dkt. No. 39, Plaintiff's Response to Defendant's Separate Statement of Facts ("Pl's Resp. SOF"), Fact No. 24.) Earlier that month, a female cashier complained that store manager Edgar Gomez sexually harassed her. (*Id.*, Fact No. 15.) The female cashier reported at least one instance of inappropriate touching to Plaintiff. (*Id.*, Fact Nos. 16 & 20.) Phan denies that he witnessed any inappropriate touching, but Phan did provide a signed, written statement that he witnessed Gomez inappropriately grab the cashier's breasts. (*Id.*, Fact Nos. 18 & 22.)

Phan told the cashier to report the incident to CSK Human Resources, but Phan did not report this incident himself, though he knew company policy required him to report sexual harassment. (*Id.*, Fact Nos. 19 & 21.) The sexual harassment investigation resulted in Gomez's termination from employment with CSK. (*See Id.*, Fact No. 8.) Based upon CSK's investigation of the cashier's sexual harassment allegations, which included Plaintiff's interview and written statement, CSK issued Plaintiff a Letter of Concern for failure to report the sexual harassment in violation of known company policy. (*Id.*, Fact No. 24.)

Phan does not argue that there is a material issue of fact as to his receiving a letter of concern for not reporting sexual harassment.

### 3. *Retaliation for participating in sexual harassment investigation.*

In February 2009, Phan complained to CSK Human Resources that his district manager, Marcus Vasquez, who was "very close friends" with Gomez, harassed Phan based on Phan's participation in the sexual harassment investigation that led to Gomez's termination. (*Id.*, Fact No. 8.) Plaintiff complained that Vasquez went to Plaintiff's store, called Plaintiff over with a finger gesture, criticized Plaintiff for low sales figures and threatened to demote or fire Plaintiff if there was no improvement. Phan also complains that Vasquez also gave Phan a low performance evaluation in March 2009. CSK investigated Plaintiff's complaint and issued Vasquez a Letter of Expectation admonishing Vasquez to treat all team members with respect.

Phan does not argue that there is a material issue of fact regarding retaliation for participating in the sexual harassment investigation.

### B. FIRST COMPLAINT TO THE CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING ("DFEH")

On July 2, 2009, Plaintiff filed a complaint with DFEH ("First DFEH Complaint") alleging that he was being "retaliated against, denied promotional opportunities and denied a workplace free from harassment based on [his] participation in a sexual harassment investigation" about Gomez. (Pl's Resp. to SOF, Fact No. 7.) The First DFEH Complaint charges that Vasquez harassed Phan in retaliation for Phan's participation in the sexual harassment investigation that led to Gomez's termination. (*Id.*, Fact No. 8.) Phan's First DFEH Complaint did not reference discrimination or harassment on the basis of race or national origin or any other retaliatory conduct, nor did the First DFEH Complaint reference Phan's race or national origin. (*Id.*, Fact Nos. 9 & 10.) DFEH investigated Phan's charges, and formally notified Plaintiff it found no FEHA violations.

### C. EVENTS INVOLVING STORE MANAGER GEORGE AJLOUNY

#### 1. *Called Phan a "short Asian" and measured Phan with tape measure.*

On three separate occasions, Phan's store manager, George Ajlouny, mocked Phan in front of co-workers by referring to Plaintiff as a "short Asian" and measured Plaintiff with a tape measure. (*See* Deposition of Richard Phan ("Phan Dep."), MSJ, Exs. 1 & 23, Dkt. Nos. 38-7 & 40-3, at 21:4-19, 24:24-25:23, 28:2-21.) After the third such measuring incident, Phan told Ajlouny to stop and Ajlouny "never did it again." (*Id.* at 28:2-21.) However, Ajlouny and a delivery driver named "Steve" continued to makes jokes about Phan's height until Phan told them to stop. (*Id*. at 28:22-30:17.)

#### 2. *Denied Phan breaks and required Phan to do more work than others.*

Plaintiff alleges that he was denied breaks by Ajlouny, while white or Hispanic employees were allowed to take breaks. Phan also complains that Ajlouny required Plaintiff do more work than his coworkers and that Phan frequently was required to work while his coworkers were idle. This extra work included stocking shelves and unloading shipments. Because Ajlouny kept the store hot (the thermostat generally registered between 74 and 78 degrees Fahrenheit), and would not

permit anyone to adjust the thermostat (Ajlouny wrote "Don't Touch" on the thermostat), it was uncomfortable for Phan to perform these heavy physical tasks.

Ajlouny also altered Phan's time cards to make it appear as if Phan had taken his lunch and other breaks, and, Ajlouny altered his own time card to reflect overtime and other hours Ajlouny did not work. Plaintiff also complains that Ajlouny stole merchandise from the store. Ajlouny was terminated in August 2010 after Phan complained to CSK Human Resources about Ajlouny's time card alteration and theft.

Phan argues that there is a material issue of fact as to whether he was denied mandated breaks by Ajlouny on the basis of race.

### 3. *Phan was refused time off to visit a dying family member.*

On May 28, 2010, Plaintiff's uncle was admitted to the hospital with terminal cancer. Plaintiff called work to notify them that he would be unable to work his shift on Saturday, May 29, 2010 because of this family emergency. Phan was concerned about the inconvenience, so he worked on Sunday, May 30, 2010 from 7:45 a.m. to 4:45 p.m. and then returned to the hospital. Phan's scheduled days off that week were on Wednesday and Thursday. Plaintiff called work to request time off to remain with his uncle, who was in a coma at this point. Management had no complaint with Phan taking that Monday and Tuesday off. (Complaint at 12.) On Tuesday, Phan sent a text message to a co-worker to inform Ajlouny, who was on vacation at the time, that Phan would remain in the hospital for his scheduled days off, Wednesday and Thursday. (*Id.*) Ajlouny immediately called Phan, yelled at Phan and refused the request for leave stating that Phan needed to work on Wednesday and Thursday because Phan already had taken time off for the family emergency. (*Id.*) Phan returned to work that Wednesday and was berated by Ajlouny for taking time off. (*Id.*)

Phan argues there is a material issue of fact regarding whether *Vasquez* denied Phan time off to visit his uncle as retaliation for Phan's complaints to Vasquez.

### 4. *Other disparate treatment.*

Plaintiff complains that other co-workers were allowed to take time off but Plaintiff was always refused time off. Plaintiff claims that seven managers have been hired at his store since 2003 but no open positions were posted, and even if the positions were posted, he was told by

5

Vasquez that he would never be promoted. (Complaint at 10:7-12.)

### D. PROCEDURAL BACKGROUND

Plaintiff filed a second complaint with DFEH ("Second DFEH Complaint") on August 30, 2010, which is substantially similar to the Complaint filed in this lawsuit. On March 3, 2011, Plaintiff filed this lawsuit in the Superior Court for the County of San Mateo. Defendant removed the action to this Court on the basis of diversity jurisdiction on May 11, 2011.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, but the Court may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, discovery responses, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On an issue where the non-moving party will bear the burden of proof at trial, the moving party can prevail by pointing out the absence of evidence to support the non-moving party's case. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.*

If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial in order to defeat the motion. *Id*. The non-moving party may not rest upon mere allegations or denials of the moving party's evidence, but instead must point to admissible evidence that shows there is a genuine issue of material fact for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000); *Nelson v. Pima Cmty.*

*College Dist.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute"); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat the [defendant's] summary judgment motion"). In determining whether to grant or deny summary judgment, it is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted). Rather, the Court is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *See id.*; *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

### III. DISCUSSION

CSK argues that it is entitled to summary judgment[4] because Phan cannot make out a prima facie case of discrimination, harassment or retaliation. Additionally, CSK argues that many of the alleged acts on which Plaintiff bases his claims are time-barred and/or Phan failed to exhaust administrative remedies because they occurred more than one year before Phan filed his Second DFEH Complaint in August 2010. The Court will first address the issues of exhaustion of administrative remedies and statute of limitations.

### A. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Under California law, before bringing a FEHA claim, a party must exhaust all administrative remedies. Cal. Gov. Code § 12960(b); *Okoli v. Lockheed Tech. Operations Co*, 36 Cal. App. 4th 1607, 1613 (Cal. Ct. App. 1985). Exhaustion requires the filing of an administrative complaint with the DFEH within a year of the alleged unlawful employment practice and obtaining a notice of right to sue from DFEH. "As for the applicable limitation period, the FEHA provides that no complaint

---

[4] Defendant has requested the Court take judicial notice of the Complaint filed in this action. The Court will take notice of the complaint filed in this case. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

7

for any violation of its provisions may be filed with [DFEH] '*after* the expiration of one year from the date upon which the alleged *unlawful practice . . . occurred.*'" *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (Cal. 1996) (quoting Cal. Gov. Code §§ 12960(b), (d)) (emphasis in original). The scope of the administrative charge defines the permissible scope of the subsequent civil action. *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001). Allegedly unlawful conduct not included in the administrative complaint cannot be sued upon unless the "new" conduct is "like or reasonably related to" the administrative allegations. *Id.* Failure to exhaust administrative remedies precludes any later civil lawsuit based on those alleged acts.

In his first DFEH complaint, filed on July 2, 2009, Plaintiff alleged that he was being retaliated against, denied promotional opportunities, and denied a workplace free from harassment based upon his participation in a sexual harassment investigation. (Defendant's Separate Statement of Undisputed Material Facts ("CSK's SOF"), Dkt. No. 38-4, Fact No. 7; Pl's Resp. to SOF, Fact No. 7.) The administrative charge claims that Vasquez harassed Phan in retaliation for participating in the investigation that led to Gomez's termination. (Pl's Resp. SOF, No. 8.) Plaintiff's first DFEH complaint did not reference discrimination or harassment on the basis of race or national origin, (CSK's SOF, Fact No. 9; Pl's Resp. SOF, No. 9), and Phan does not argue there is a material issue of fact regarding the workplace retaliation that was reported in this First DFEH Complaint. Thus, the Court concludes that Phan's First DFEH Complaint did not preserve claims for discrimination or harassment based upon race or national origin.

In Phan's Second DFEH Complaint, filed on August 12, 2010, Phan alleged, in essence, the same facts stated in the complaint in this lawsuit. CSK does not argue that Phan failed to exhaust administrative remedies with respect to conduct occurring on or after August 12, 2009. Phan argues that conduct occurring in July 2009 falls within the statute of limitations based on the "continuing violations doctrine." (*See* Plaintiff's Opposition to Motion for Summary Judgment ("Pl's Opp'n"), Dkt. No. 39-3, at 3-5.) Phan identifies one incident on July 26, 2009, which he argues is sufficiently related to FEHA violations that occurred frequently thereafter, and constitute a "continuing course of conduct." (*Id.*; Declaration of Richard Phan ("Phan Dec."), Dkt. No. 41, ¶¶ 3-4.)

### B. PLAINTIFF'S DECLARATION

The only evidence that Phan has offered in opposition to summary judgment is a declaration, which Defendant argues is a "sham" declaration that contradicts Phan's deposition testimony in an attempt to create disputed issues of facts. (Reply, Dkt. No. 40, at 2-6.)

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009) (quoting *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). This "sham affidavit" rule prohibits a party from creating a genuine issue of material fact in opposition of a motion for summary judgment by submitting a contradictory declaration "without sufficient explanation for the contradiction." *Martinez v. Marin Sanitary Service*, 349 F. Supp. 2d 1234, 1242 (N.D. Cal. 2004) (citing *Radobenko v. Automated Equip. Co.*, 520 F.2d 540, 544 (9th Cir. 1995)); *Nelson*, *supra*, 571 F.3d at 928 (a party cannot create a "dispute with himself to defeat summary judgment"). However, this rule does not preclude the non-moving party from elaborating upon, explaining, or clarifying prior testimony, nor does it provide a basis to exclude an affidavit due to "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence." *Nelson*, *supra*, 571 F.3d at 928 (internal citations omitted). While "[s]ham affidavits may be disregarded in summary judgment proceedings," *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 660 (N.D. Cal. 1994), a court must exercise caution in applying this rule and make a factual determination that the contradiction actually is a "sham." *Nelson*, *supra*, 571 F.3d at 928; *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 855 (N.D. Cal. 2011).

In reviewing the briefs and Plaintiff's deposition transcript excerpts and declaration, Plaintiff does appear to contradict himself in a number of ways in an attempt to create a factual dispute. The Court will address specific contradictions as it analyzes the evidence and claims below.

### C. DISCRIMINATION BASED ON DISPARATE TREATMENT IN VIOLATION OF CAL. GOV. CODE § 12940(a)

FEHA prohibits an employer from taking any adverse employment action based on a protected characteristic, such as his race, color, national origin, or ancestry. Cal. Gov. Code. § 12940(a).

9

Discrimination can be established through direct evidence–evidence, which if believed, proves the fact of discriminatory animus "without inference or presumption"–or indirect evidence. *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (internal citations omitted). A plaintiff may prove discrimination by using indirect, or circumstantial evidence, under the burden-shifting framework laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354-55 (Cal. 2000) (California courts look to federal anti-discrimination law as an aid in interpreting analogous state law provisions, including the *McDonnell Douglass* burden-shifting analysis).

Under the *McDonnell Douglas* burden-shifting framework, to establish a prima facie case of disparate treatment, Phan must show that: (1) he belongs to a protected class; (2) he was performing his job satisfactorily (or was qualified for a position for which he applied); (3) he was subject to an adverse employment action[5]; and (4) similarly situated individuals outside of his protected class were treated more favorably. *Chuang v. University of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000); *see Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002).

If a plaintiff succeeds in making a prima facie showing of discrimination, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the defendant does so, the burden shifts back to the plaintiff to demonstrate that the defendant's articulated reason is a pretext for unlawful discrimination "by either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Aragon, supra*, 292 F.3d at 658-59 (internal quotations and citations omitted); *Godwin*, 150 F.3d at 1220.

Plaintiff contends there are material issues of fact on the following: (1) failure to promote because Vasquez told Phan that Vasquez would only promote Mexican employees; (2) whether Phan was assigned more work by Vasquez from at least July 2009 through July 2010; (3) whether Ajlouny

---

[5] An adverse employment action is one that materially affects "compensation or terms, conditions, or privileges of employment." *See Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 373 (Cal. Ct. App. 2005).

would not allow Phan to take mandated breaks and would alter Phan's time card to reflect that Phan took breaks; and (4) whether Ajlouny would not allow Phan to take vacation.

### 1. Failure to promote.

Failure to promote is a common manifestation of disparate treatment. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

From 2009 through March 2011, Phan worked in CSK's Millbrae store as a first assistant manager. (Pl's Resp. SOF, Fact No. 28.) During that timeframe, CSK had an internal company policy requiring employees to file formal, written applications to be considered for any open position. (*Id.*, Fact No. 29.) Plaintiff knew of CSK's "Internal Job Posting" policy required formal, written applications for any open positions. (*Id.*, Fact No. 30.) Plaintiff never formally applied for any open store manager position at the Millbrae store during the relevant time. (*Id.*, Fact No. 31.)

Plaintiff claims that since he was demoted to assistant manager in 2003, CSK has hired seven different people to manage his store, all white or Hispanic, but that CSK never posted any open store manager position. (Phan Dec. ¶ 3; Phan Dep. at 133:2-21.) CSK argues that it is entitled to summary for failure to promote because Phan did not follow internal company policy and apply for any open store manager position. However, CSK does not argue, or offer evidence that might support such an argument, that it complied with internal company policy and posted any of these open store manager positions.[6] Moreover, Phan claims that Vasquez told Phan that he would not be promoted. In Phan's declaration in support of his opposition he clarifies that the reason Vasquez would not promote Phan is because Phan is Asian and Vasquez would only promote Mexican employees. (Phan Dec. ¶ 4.)

Based on the foregoing analysis, the Court finds that Defendant, as the moving party, has not met its initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact for trial. *See Celotex*, *supra*, 477 U.S. at 323. Therefore, there is a material issue of fact as to whether Plaintiff was denied promotional opportunities on the basis of his race.

---

[6] Exhibit 20 is a Job Posting and Fill Report for the Bay Area Region in 2009. However, this document is not cited by CSK and is not self-explanatory.

11

    *2. Assigned more work than other employees.*

    "[A]ssigning more, or more burdensome, work responsibilities, is an adverse employment action." *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

    In his declaration submitted in opposition of summary judgment, Phan claims that Vasquez gave him more work than white or Hispanic employees. Defendant argues that these allegations should be disregarded as "sham" because they contradict Phan's deposition testimony. The Court agrees.

    Phan never raised this issue in his Complaint or at deposition. At deposition Phan testified that the last "bad act" by Vasquez was in March 2009, when Vasquez gave Phan a low performance evaluation. (*Id.* 111:11-112:3, 144:8-14.) Now Phan claims that Vasquez discriminated against Phan on the basis of race since at least July 2009 and up through July 2010. (Phan Dec. ¶¶ 3-4.) The Court will not credit his declaration, which contradicts his earlier testimony. *See Nelson*, *supra*, 571 F.3d at 927 ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").

    Based upon this analysis, the Court concludes that Phan has failed to raise a material issue of fact as to whether *Vasquez* assigned Phan more work than other workers.

    *3. Denied rest breaks.*

    Being refused mandatory breaks constitutes an adverse employment action under FEHA. *See Davis*, *supra*, 520 F.3d at 1089 ("We have held that assigning more, or more burdensome, work responsibilities, is an adverse employment action.").

    Phan contends that he was not allowed to take meal and rest breaks while white and Hispanic employees were allowed to take breaks. Plaintiff identifies Roger Colvin, a white assistant manager at his store who was allowed to take breaks. The reason that Phan believes that Ajlouny denied Phan meal and rest breaks due to his race and national origin is because Ajlouny made racially disparaging remarks about Phan (for example, calling Phan a "short Asian") and because non-Asian American employees were allowed to take breaks but Phan was not.

    CSK has not submitted any evidence, for example, time cards, to demonstrate that Phan actually took meal and rest breaks. Instead, Defendant points to deposition testimony that Phan had

the ability to control when other employees took meal and rest breaks to argue that Phan must have taken meal and rest breaks. However, Phan testified at deposition that he could *not* take breaks because "[t]he manager ask me to stay there all the time, no break." (Phan Dep. at 39:5-9.) CSK also argues that it was Phan's choice to not take breaks and cites the following deposition testimony: "It's not that I couldn't take my break but if I take my break they will report that I left the store."[7] (*Id.* at 41:17-19.)

Based on the foregoing analysis, the Court finds that Defendant, as the moving party, has not met its initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact for trial. *See Celotex*, *supra*, 477 U.S. at 323. Therefore, there is a triable issue of fact as to whether Plaintiff was denied meal and rest breaks on the basis of his race.

*4. Denied vacation time.*

Being denied vacation time could constitute an adverse employment action under FEHA. *See Davis*, *supra*, 520 F.3d at 1089 ("We have held that assigning more, or more burdensome, work responsibilities, is an adverse employment action").

Plaintiff suggests that there is a material issue of fact regarding whether he was denied vacation in May 2010 because he is Asian. The evidence submitted by CSK, including Plaintiff's deposition testimony, establishes that Plaintiff was not denied vacation in May 2010 and that later in 2010, Phan was allowed to take vacation when he asked for time off. Phan also believes that he was never offered management training, and that this was used as an excuse to deny him vacation time. CSK has offered evidence that Plaintiff has participated in over 100 trainings since 2010.

Therefore, Phan has failed to raise a material issue of fact as to whether he was denied vacation time on account of his race.

Based on the foregoing analysis, the Court **DENIES** the Motion for Summary Judgment as to the First Cause of Action for Disparate Treatment.

**D. RETALIATION IN VIOLATION OF CAL. GOV. CODE § 12940(h)**

FEHA prohibits retaliation against an employee "because the person has opposed any

---

[7] Plaintiff also claims there is a material issue of fact regarding whether CSK owes him overtime pay but offers no evidence that he is entitled to any pay or that pay was withheld on account of his race or nationality.

practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940.

The elements for a claim of retaliation are that (1) the plaintiff took part in a protected activity; (2) the plaintiff was subject to an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (Cal. 2005).[8] Protected activities under FEHA include charging, testifying, assisting or participating in any manner in proceedings or hearings under the statutes; or opposing acts made unlawful by the statutes. "[T]he adverse action element is present when 'a reasonable [person] would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination.'" *Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1225 (9th Cir. 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (alterations in original). Causation may be inferred from proximity in time between the protected activity and the adverse action. *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986).

In opposing summary judgment, Phan claims that there is an issue of material fact as to whether Vasquez retaliated against Plaintiff by refusing to grant time off because Phan complained to Vasquez that Vasquez was unfairly targeting Plaintiff for termination and complained that Ajlouny made discriminatory comments about Phan. (*See* Pl's Opp'n 6-7.) Under FEHA, "an employee need not formally file a charge in order to qualify as being engaged in protected opposing activity"; an employee's opposition to a practice proscribed by FEHA only needs "to put an employer on notice as to what conduct it should investigate." *Yanowitz, supra*, 36 Cal. 4th at 1047. Thus, complaining to a supervisor may qualify as a protected activity.

Phan's only actionable evidence of retaliation is that he "complained to Vasquez, as my supervisor, that his actions were discriminatory, but he ignored my complaints." (Phan Dec. ¶ 4.) Ignoring complaints of discrimination does not show retaliation. Moreover, neither Phan's

---

[8] The burden-shifting analysis for a retaliation claim is much the same as that for a discrimination claim. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1997) (citing *Lam v. University of Hawaii*, 40 F.3d 1551, 1559 & n. 11 (9th Cir. 1994)).

Complaint nor Phan's declaration support this theory of retaliation. The retaliation raised in Phan's Complaint and in his First DFEH Complaint is that Vasquez retaliated against Phan for participating in the sexual harassment investigation that led to the termination of Vasquez's friend. Further, in his Complaint, Phan only alleges that Ajlouny berated Plaintiff for taking time off to visit a dying uncle in May 2010 and that Ajlouny refused to approve additional days off. Phan nowhere suggests that either decision was made by Vasquez, let alone that Vasquez made the decision in retaliation for Phan's complaining about discrimination. Phan did not testify at deposition that he complained to Vasquez or that Vasquez retaliated against Phan for complaining; though Phan did testify at deposition that he identified all problems that he had with Vasquez. (Phan Dep. at 144:12-14.) Additionally, Phan's declaration indicates that the reason that he was denied leave was because of his race, but Phan does not suggest any connection between complaining to Vasquez and being denied leave. Therefore, Phan has not raised a material issue of fact regarding retaliation.

Based on the foregoing, the Court **GRANTS** summary judgment as to the Third Cause of Action for Retaliation.

### E. HOSTILE WORK ENVIRONMENT AND HARASSMENT IN VIOLATION OF CAL. GOV. CODE § 12940(j)

FEHA prohibits workplace harassment based on "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age or sexual orientation." Cal. Gov. Code. § 12940(j)(1).

The elements of a racial discrimination or a racially hostile work environment claim are that (1) the plaintiff was subjected to unwelcome racial harassment; (2) the harassment was based on race; (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment; and (4) the employer is liable for the harassment.[9] *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (citing *Gregory v. Widnall*, 153 F.3d 1071,

---

[9] Under FEHA, an employer is strictly liable for workplace harassment by a supervisor – defined as any person with authority to hire, transfer, or discharge other employees or the power to direct the employee's daily work activities. Cal. Gov. Code § 12926(r). FEHA imposes a negligence standard where the harassing conduct is by a plaintiff's coworkers (as opposed to a plaintiff's supervisor); to be liable, the employer must have "know[n] or should have known of this conduct and fail[ed] to take immediate and appropriate corrective action." *Id.* § 12940(j)(1).

15

1074 (9th Cir. 1998)).[10] Harassment based upon race or national origin includes conduct such as: verbal harassment, including epithets, derogatory comments, or slurs; physical harassment, including an assault, or interference with normal work or movement; and visual forms of harassment including derogatory posters, cartoons or drawings. *See* Cal. Civ. Jury Instr. 12.05.[11] To determine whether conduct is sufficiently severe or pervasive, the Court considers "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003); *Davis*, *supra*, 858 F.2d at 349 (victim must show a "concerted pattern of harassment of a repeated, routine or a generalized nature" and that the alleged conduct constituted an "unreasonably abusive or offensive work-related environment or adversely affected the reasonable employee's ability to do his or her job."); *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (Cal. 2009) (no recovery for harassment that is "occasional, isolated, sporadic, or trivial"); *Etter*, 67 Cal. App. 4th at 462 (plaintiff may prevail on harassment claim "when the employer has created a working environment heavily charged with ethnic or racial insult and ridicule"). Whether workplace harassment is "severe" or "pervasive" must be assessed "from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004).

        The conduct at issue here is neither "severe" nor "pervasive"―Phan testified at deposition that he was called a "short Asian guy" and measured on three different occasions, and was the subject of related jokes on a couple of additional occasions. Contradictory to this deposition testimony, in the declaration filed to oppose summary judgment, Phan now claims that this conduct occurred on a daily basis. (Phan Dec. ¶ 5.) The Court will not credit his declaration, which contradicts his earlier testimony. *See Nelson*, *supra*, 571 F.3d at 927 ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").

---

[10] California courts also apply federal decisions interpreting Title VII to analyze FEHA race and national origin harassment claims. *Etter v. Veriflo Corp.,* 67 Cal. App. 4th 457, 464 (Cal. Ct. App. 1998).

[11] Unlike in disparate treatment or retaliation cases where an employer may present a legitimate nondiscriminatory reason for the adverse employment action, there is no possible justification for harassment in the workplace and thus the *McDonnell Douglas* framework does not apply. The employer may deny the charge but may not argue that the harassment was in some way warranted.

The conduct alleged, being called "short Asian" and measured (and related jokes), is not as severe as conduct previously held insufficient to create a hostile work environment. *See Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (jokes using the phrase "China man," ridiculing plaintiff for mispronunciation of names, and employees pulling their eyes back with their fingers to mock the appearance of Asians not hostile work environment for Chinese woman); *Vasquez v. County of Los Angeles*, 307 F.3d 884, 893 (9th Cir. 2002) (finding no hostile environment where employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (finding no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and called plaintiff "Medea"); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1031, 1036 (9th Cir. 1990) (finding no hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino). Significantly, Plaintiff testified at deposition that the allegedly harassing conduct did not interfere with his work performance. (*See* Phan Dep. at 46:9-20 & 147:18-25.) Thus, Plaintiff's own deposition testimony confirms this Court's conclusion that the conduct at issue here was insufficiently severe or pervasive to create a hostile work environment.

Based on the foregoing analysis, the Court **GRANTS** summary judgment as to the Ninth Cause of Action for harassment and hostile work environment.

**F. FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT IN VIOLATION OF CAL. GOV. CODE § 12940(k)**

It is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov. Code § 12940(k).

To recover for failure to prevent discrimination and harassment from occurring Phan must establish three elements: (1) he was subjected to discrimination, harassment or retaliation, (2) CSK

failed to take all reasonable steps to prevent discrimination, harassment or retaliation, and (3) this failure caused him to suffer injury, damage, loss or harm.  *Lelaind v. City and County of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008) (citing Cal. Civ. Jury Instr. 12.11).

CSK argues that it is entitled to summary judgment on this claim on the grounds that Phan cannot establish that he was subjected to discrimination, harassment or retaliation.  Because Defendant has not shown the absence of a material issue of fact as to Phan's claim for disparate treatment, summary judgment for failure to prevent discrimination and harassment is not appropriate.

Based on the foregoing analysis, the Court **DENIES** summary judgment as to the Seventh Cause of Action for failure to prevent discrimination and harassment.

## IV. CONCLUSION

For the reasons set forth above, CSK Auto, Inc.'s Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

At the conclusion of this case, judgment shall be entered in favor of Defendant and against Plaintiff on the Second through Sixth, Eighth, and Ninth Causes of Action.

This case shall proceed to trial on Plaintiff's First Cause of Action for Disparate Treatment on these two issues: (1) whether Plaintiff was denied promotional opportunities on the basis of his race; and (2) whether Plaintiff was denied rest breaks on the basis of his race; and on Plaintiff's Seventh Cause of Action for failure to prevent same.

This Order Terminates Docket Number 38.

**IT IS SO ORDERED**.
Date: August 27, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**